**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL HERNANDEZ DELGADO,<br>Petitioner,<br>v.<br>JOSHUA JOHNSON, et al.,<br>Respondents. | NO. EDCV 26-5840-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

On October 2, 2026, Daniel Hernandez Delgado ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") with the Declaration of Daniel Hernandez Delgado[1] against: Joshua Johnson, Warden of the Adelanto Detention Center; Jaime Rios, Acting United States Immigration and Customs Enforcement ("ICE") Field Office Director; David Venturella, Acting ICE Director; Markwayne Mullin,

[1] On October 5, 2026, Petitioner filed an Amended Declaration ("Delgado Decl."). (Dkt. No. 9).

Secretary of the Department of Homeland Security ("DHS"); and United States Attorney General Todd Blanche (collectively "Respondents"). (Docket ("Dkt.") Nos. 1, 3). The Petition challenges Petitioner's alleged warrantless arrest and also contends Petitioner is being detained in violation of due process of law. (Petition at 13-14). Petitioner seeks, among other things, his immediate release from custody. (Petition at 15-16).

On October 9, 2026, Respondents filed an Answer to the Petition, stating "Petitioner appears to be entitled to request and receive an initial bond hearing" pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). (Dkt. No. 12). On October 11, 2026, Petitioner filed a Reply. (Dkt. No. 13). On November 3, 2026, Petitioner filed a Request for Ruling. (Dkt. No. 14).

The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 4, 10). For the reasons discussed below, the Petition is GRANTED, the Request for Ruling is DENIED as moot, and Petitioner is ordered immediately released from custody.

## II.

## BACKGROUND

Petitioner is a Mexican national who entered the United States without inspection in 2016, when he was 17 years old. (Petition, ¶¶ 2, 26). On December 14, 2019, Petitioner married a United States citizen, and he has two young daughters with his wife, who is currently on

disability after being diagnosed with postpartum depression. (Petition, ¶ 27). Petitioner has worked as a painter for years and recently began working as a cook. (Petition, ¶ 26; Delgado Decl., ¶ 1). He has no criminal history. (Petition, ¶ 29; Delgado Decl., ¶ 6). He is the beneficiary of an approved Form I-130 petition his wife filed on his behalf with a November 9, 2021 priority date.[2] (Petition, ¶¶ 7, 19, 28). After the Form I-130 petition was approved, Petitioner filed a Form I-601A, seeking a provisional unlawful presence waiver.[3] (Petition, ¶ 7).

---

[2] "Form I-130 is a 'Petition for Alien Relative' that allows U.S. citizens or lawful permanent residents . . . to establish a qualifying family relationship with a foreign relative who wishes to immigrate to the United States." Lu v. United States Citizenship & Immigr. Servs., 2025 WL 2784708, *1 n.4 (D. Nev. 2025). If, as Petitioner asserts occurred here, United States Citizenship and Immigration Services ("USCIS") "verifies the relationship and approves the petition, then the noncitizen, if already in the United States, can apply to USCIS for adjustment of status to permanent resident, or, if not, to a Department of State consular office for an immigrant visa[.]" Hanan v. United States Citizenship & Immigr. Servs., 174 F.4th 614, 624 (9th Cir. 2026) (citations and footnote omitted); see also Lovo v. Miller, 107 F.4th 199, 202 (4th Cir. 2024) ("Some noncitizens [who are beneficiaries of approved Form I-130 petitions] may apply for adjustment of status from within the United States. But others — such as noncitizens who are unlawfully present in the United States — cannot. Instead, before this second group of noncitizens can obtain lawful-permanent-resident status, they must exit the country and apply for an immigrant visa." (citations omitted)).

[3] "If a noncitizen has been unlawfully present in the United States for more than one year and leaves the country voluntarily — such as when they leave to apply for a visa — they are ineligible to receive a visa for ten years." Lovo, 107 F.4th at 202. However, a noncitizen beneficiary of an approved Form I-130 petition can seek an exception from this restriction by filing, "from within the United States, a provisional waiver application, or Form I-601A, which, if approved, means that they may depart the country to seek adjustment of status without risking a long period of inadmissibility." Sanchez v. Mullin, 188 F.4th 268, 272 (4th Cir. 2026).

On September 14, 2026, ICE agents arrested Petitioner when he arrived at his workplace. (Petition, ¶¶ 3-5, 25; Delgado Decl., ¶¶ 1-2). According to Petitioner, the agents were looking for someone else and did not have a warrant to arrest Petitioner.[4] (Petition, ¶¶ 4-5). That same day, DHS served Petitioner with a Notice to Appear, charging him with removability under Immigration and Nationality Act § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. (Petition, ¶ 25; Dkt. No. 1-1 at 4-6). Petitioner has been detained at the Adelanto ICE Processing Center since his arrest. (Petition, ¶ 19).

**III.**

**DISCUSSION**

**A. <u>Exhaustion of Administrative Remedies is not Required</u>**

Respondents contend this action should be dismissed because Petitioner failed to exhaust his administrative remedies by seeking a bond hearing before an Immigration Judge ("IJ") and then, if not released, appealing to the Board of Immigration Appeals ("BIA"). (Answer at 2-3). Petitioner disagrees, arguing exhaustion would be futile. (Petition, ¶¶ 17-18).

---

[4] The Form I-213 Petitioner attached to his Petition states that ICE agents obtained a warrant before arresting Petitioner. (<u>See</u> Dkt. No. 1-1 at 1-3). Because the Court resolves this Petition on due process grounds, the Court will not delve into any discrepancies – potential or actual – between the Petition, Petitioner's declaration, and the Form I-213.

"In order to seek habeas relief under section 2241, . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." Singh v. Napolitano, 649 F.3d 899, 900 (9th Cir. 2010) (per curiam) (citation omitted); see also Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) ("As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez, 872 F.3d at 988 (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court does not believe the three Puga factors weigh in favor of prudential exhaustion.[5] But even assuming they do, "Petitioner [is] excused from exhausting administrative remedies because further administrative proceedings would not address . . . whether Petitioner's [arrest and] detention compl[y] with . . . due process." Alvarez-Guatibonza v. Adelanto ICE Processing Ctr., 2026 WL 1770663, *3 (C.D. Cal. 2026); see also R.N.G. v. Semaia, 838 F. Supp. 3d 1035, 1043 (C.D. Cal. 2026) ("Here, even if the Court assumes that the *Puga* factors apply, Petitioner's pursuit of administrative remedies would be inadequate and futile. . . . A post-deprivation bond hearing . . . would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest." (emphasis in original)); Garcia v. Hyde, 817 F. Supp. 3d 112, 125 (D. R.I. 2025) ("Mr. Garcia ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile."); Cao v. Warden of Adelanto ICE Processing Ctr., 2026 WL 2575932, *2 (C.D. Cal. 2026) ("Petitioner contends that the Government violated the Fifth Amendment by taking her into custody without pre-deprivation process. The BIA's authority in a custody appeal extends to redetermination of custody, not to the constitutionality of the arrest that preceded it.

---

[5] For instance, since the Court is limiting its discussion to Petitioner's due process claim, agency "expertise is not necessary to decide the *legal* question[] [of] whether Petitioner's continued detention complies with . . . due process." Alvarez-Guatibonza v. Adelanto ICE Processing Ctr., 2026 WL 1770663, *2 (C.D. Cal. 2026) (italics in original); Hernandez, 872 F.3d at 989; Fuentes v. Mullin, 2026 WL 1847436, *6 (C.D. Cal. 2026); Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026).

Requiring exhaustion of a remedy that could not redress the claim would serve none of the doctrine's purposes."). "Moreover, requiring Petitioner to be subjected to unlawful detention pending [exhaustion] would cause irreparable harm, which is a separate and independent basis to waive exhaustion[.]" Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Kumar v. Rios, 2026 WL 1764923, *3 (C.D. Cal. 2026); see also Hernandez v. Mullin, 2026 WL 846037, *8 (C.D. Cal. 2026) ("[R]equiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending the BIA's decision would cause irreparable harm, which alone provides a sufficient basis to waive exhaustion. . . ."). Accordingly, for these reasons, Petitioner is excused from having to exhaust administrative remedies, and Respondents' request to dismiss the pending Petition for failure to exhaust administrative remedies is denied.

### B. Petitioner is Entitled to Relief on His Due Process Claim

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez, 872 F.3d at 990; Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from

government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

Petitioner alleges, *inter alia*, that ICE has unlawfully detained him in violation of due process of law. (Petition at 15 & ¶¶ 31-33, 39-42). Respondents assert that Petitioner appears entitled to request

and receive an initial bond hearing under Rodriguez Vazquez, but he "is properly detained pending such potential bond proceedings because this is [his] first detention[.]" (Answer at 2).

Here, Petitioner arrived in the United States in 2016, married a United States citizen, had two young children, worked for years, has no criminal history, filed a Form I-130 petition in November 2021 that was approved on January 9, 2023 (see Dkt. No. 1-1 at 3), and filed a Form I-601A provisional unlawful presence waiver after his Form I-130 petition was approved. Under these circumstances, Petitioner has a protected liberty interest in remaining free from custody. See Antunez v. Mullin, 2026 WL 3545013, *3 (C.D. Cal. 2026) ("Petitioner entered the United States in 2013 as a teenager, married his wife in August 2022, and filed his Form I-130 in September 2022. Thus, when Petitioner and his wife filed [the Form I-130] in September 2022, Petitioner knowingly and intentionally alerted Respondents to his presence in the country, yet Respondents 'made a decision not to detain [him]' during the pendency of his applications. USCIS even approved Petitioner's Form I-130 in November 2025, and he filed his Form I-601A in October 2026[.] Hence, for over four years, Respondents, with 'full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" (citations omitted)); Yuija v. Warden, Adelanto ICE Processing Ctr., 2026 WL 3122457, *3 (C.D. Cal. 2026) ("In

December 2025, Petitioner filed Form I-130 and Form I-485 whereby immigration officials were aware of Petitioner's presence in the United States and her desire to lawfully remain here with her husband. Petitioner was not then promptly detained. This decision to allow Petitioner to live in the community during this time gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.' Accordingly, Petitioner has a liberty interest in remaining free from detention." (citation omitted)); Zhou v. Janec[k]a, 2026 WL 2365550, *5 (C.D. Cal. 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); Monsalve v. Warden, Cal. City Immigr. Processing Ctr., 2026 WL 3415014, *2 (E.D. Cal. 2026) ("Petitioner has lived at liberty in the United States for eight years. Immigration authorities were aware of his presence in the United States following the submission of his I-130 petition and [chose] not to detain him. . . . By acquiescing to his continued presence in the United States, the Government vested in Petitioner a liberty interest in his continued freedom while his immigration case proceeded.").

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient. Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable

> value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993; Zhou, 2026 WL 2365550 at *5.

As to the first factor, "Petitioner has a substantial interest in remaining in the community and pursuing [his] application for immigration relief." Yao v. Janec[k]a, 2026 WL 2666861, *5 (C.D. Cal. 2026); Antunez, 2026 WL 3545013 at *3; Zhou, 2026 WL 2365550 at *5; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Hakobyan v. Semaia, 2026 WL 2985380, *3 (C.D. Cal. 2026) ("'Petitioner has a vested liberty interest in remaining free from detention as he has lived for the last [nine] years.'" (quoting Abdeltawab v. Armant, 2026 WL 1045564, *2 (C.D. Cal. 2026))). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez v. Noem, 821 F. Supp. 3d 1183, 1191 (C.D. Cal. 2026) ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Antunez, 2026 WL 3545013, *4 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Yao, 2026 WL 2666861 at *5 ("[T]here is a significant risk that the government will erroneously deprive Petitioner of [her] liberty interest if it does not provide her with pre-deprivation process."); Tzoc v. LaRose, 2026 WL 2227161, *4 (S.D. Cal. 2026) ("Where the Government detains a noncitizen after years of government-authorized liberty without first providing notice or an opportunity to be heard before a neutral decisionmaker, courts have consistently concluded that the risk of erroneous deprivation is high and that a pre-deprivation hearing would significantly reduce that risk."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no

process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."). Therefore, the second Mathews factor favors Petitioner.

"Third, courts have routinely recognized that the Government's interest in detaining individuals like Petitioner without a hearing is 'low.'" Abdeltawab, 2026 WL 1045564 at *3 (citations and emphasis omitted); see also Antunez, 2026 WL 3545013 at *4 ("Respondents have minimal interest in detaining Petitioner without a pre-detention hearing."); Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Kaur v. Bowen, 2026 WL 2298803, *4 (C.D. Cal. 2026) ("[T]he government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. The government has the capability to hold such a hearing and provide the requisite notice. Forcing the government to comply with proper procedures imposes a very low burden."). And that is particularly so when, as here, "the government has not articulated any legitimate interest in support of detaining Petitioner without a pre-detention hearing."[6] Kharitonova v. Albarran, 2026 WL 531441, *3 (N.D. Cal.

---

[6] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

2026); Zhou, 2026 WL 2365550 at *6; Yao, 2026 WL 2666861 at *5; see also Chaparro Ayala v. Albarran, 2026 WL 2722780, *6 (N.D. Cal. 2026) ("Respondents' present no explanation for why their 'interests [in detaining Petitioner] must be satisfied immediately,' far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights." (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025))). Indeed, "[t]he efficiency burden entailed by a [pre-detention] bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)); Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing [a pre-deprivation hearing] would be fiscally or administratively onerous. If the government wishes to detain Ms. Garro Pinchi, it need only provide a hearing before a neutral decisionmaker. 'In immigration court, custody hearings are routine and impose a minimal cost.'" (citation omitted)); Chaparro Ayala, 2026 WL 2722780 at *6 ("[T]he fiscal and administrative burdens of a pre-deprivation hearing are insignificant."). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542

(1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Antunez, 2026 WL 3545013 at *5 ("Petitioner has established a significant liberty interest in his freedom from immigration custody, a high risk of erroneous deprivation, and a minimal countervailing governmental interest in his detention, such that he was entitled to a pre-deprivation hearing before being detained. Accordingly, Petitioner's detention without a pre-deprivation hearing violates his right to procedural due process guaranteed by the Fifth Amendment, and Petitioner is entitled to immediate release from Respondents' custody."); Yuija, 2026 WL 3122457 at *4 ("Petitioner's detention without pre-deprivation notice or hearing violates her procedural due process protections and she is entitled to release."); Kositsin v. Santacruz, 2026 WL 2866467, *4 (C.D. Cal. 2026) ("Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner's detention without adequate pre-deprivation process violated due process."); Zhou, 2026 WL 2365550 at *6 ("Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention — which was accompanied by no process — violates the Due Process Clause."); Yao, 2026 WL 2666861 at *6

(same). "And '[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required.'"[7] Berdnikova v. Janecka, 2026 WL 3559224, *5 (C.D. Cal. 2026) (quoting Torres Ferrera, 2026 WL 776145 at *6); Antunez, 2026 WL 3545013 at *5; Yuija, 2026 WL 3122457 at *4; Kositsin, 2026 WL 2866467 at *4; Zhou, 2026 WL 2365550 at *7; Yao, 2026 WL 2666861 at *6; see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully []detained"); Wang v. Mullin, 2026 WL 3413095, *5 (C.D. Cal. 2026) ("Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights."); Balbabyan v. Blanche, 2026 WL 2678267, *4 (C.D. Cal. 2026) ("Because petitioner's detention was unlawful, the proper remedy is release from custody."); Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr., 2026 WL 2497334, *3 (C.D. Cal. 2026) ("Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights."); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed.").

[7] Having so concluded, the Court does not address the other claims Petitioner raises.

## IV.

## ORDER

Accordingly, for the reasons discussed herein, the Petition (Dkt. No. 1) is **GRANTED** and the Request for Ruling (Dkt. No. 14) is **DENIED** as moot. Respondents shall immediately release Petitioner (A# 221-462-975) from immigration custody without the imposition of any restraints on his liberty. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on November 27, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: November 24, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE